1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| MIGHTY DREAMS LLC, | CASE NO. C24-00793-KKE |
| Plaintiff, | |
| v. | ORDER DENYING MOTION FOR DEFAULT JUDGMENT WITHOUT PREJUDICE |
| SHENZHEN BEIANEN AUTOMOTIVE SUPPLIES CO LTD et al., | |
| Defendants. | |

Plaintiff Mighty Dreams LLC ("Mighty Dreams") brings this false advertising case against two of its competitors. The Court denies Mighty Dream's motion for default judgment because both of its theories for false advertising are insufficiently pleaded.

## I.    BACKGROUND

Mighty Dreams sells knife sharpening stones through the Amazon store. Dkt. No. 1 ¶ 16. Defendant Shenzhen Beianen Automotive Supplies Co., Ltd. also sells knife sharpening stones through the Amazon store under the seller name FEIAN. *Id.* ¶¶ 7, 17. Defendant Shenzhen Changfuwei Furniture Co., Ltd. also sells knife sharpening stones through the Amazon store under the seller name Keepooon. *Id.* ¶¶ 8, 18.

Mighty Dreams filed this lawsuit against Defendants on June 5, 2024. Dkt. No. 1. Mighty Dream alleges Defendants "are one in the same" (*id.* ¶ 29) and engage in two forms of unfair advertising: registering multiple seller accounts to manipulate the Amazon "Buy Box" (*id.* ¶¶ 31–

32), and advertising products as discounted when the discounted price is the normal retail price (*id.* ¶¶ 35–37).

Mighty Dreams argues these false advertisements directly divert sales from it to Defendants and deceive consumers in violation of the Lanham Act (15 U.S.C. § 1125(a)), the Washington Consumer Protection Act ("CPA") (WASH. REV. CODE § 19.86.090), and Washington common law[1] unfair competition. *Id.* ¶¶ 41–75.

After multiple requests for alternative service, the Court granted Mighty Dreams leave to serve Defendants by email. Dkt. No. 14. Mighty Dreams served Defendants with this action on February 12, 2025. Dkt. Nos. 18, 19, 24-1 ¶¶ 3–4, 24-7 ¶¶ 24–29. Defendants did not respond or appear. Dkt. No. 24-1 ¶ 5. Accordingly, the Court granted Mighty Dreams' motion for entry of default under Federal Rule of Civil Procedure 55(a). Dkt. Nos. 20, 21.

Mighty Dreams now moves for entry of default judgment against Defendants for its three causes of action and for $264,508.75 in damages, a permanent injunction, and an asset freeze. Dkt. No. 24. The matter is ripe for the Court's consideration.

## II. ANALYSIS

### A. Jurisdiction

Before entering default judgment, the Court must confirm that it has both subject matter and personal jurisdiction. *See In re Tuli*, 172 F.3d 707, 712 (9th Cir. 1999) ("When entry of judgment is sought against a party who has failed to plead or otherwise defend, a district court has an affirmative duty to look into its jurisdiction over both the subject matter and the parties.").

---

[1] The complaint references "California state law" and "Washington common law[.]" Dkt. No. 1 ¶¶ 40, 75. Because the motion for default cites Washington law, the Court applies Washington common law. *See* Dkt. No. 24 at 5–6 (citing *Witham v. Clallam Cnty. Public Hosp. Dist. 2*, No. C09–5410RJB, 2009 WL 5205962, at *4 (W.D. Wash. 2009)).

ORDER DENYING MOTION FOR DEFAULT JUDGMENT WITHOUT PREJUDICE - 2

This Court has subject matter jurisdiction under 28 U.S.C. § 1331 because the Lanham Act false advertising claim arises under federal law (15 U.S.C. § 1125), and the Court has supplemental jurisdiction over the state false advertising claims under 28 U.S.C. § 1367(a).

The Court has personal jurisdiction over Defendants because, taking the allegations as true, Defendants "transacted business using a Washington state company as its sales platform, reached out to do business with Washington residents through that platform … [and] Plaintiffs' claims arose from these contacts with Washington state[.]"  *Amazon.com, Inc. v. Chalova*, No. C23-0747JLR, 2024 WL 5356879, at *2 (W.D. Wash. Oct. 17, 2024); *see* Dkt. No. 1 ¶ 11.

## B.    Legal Standard

A court's decision to enter a default judgment is discretionary.  *Aldabe v. Aldabe*, 616 F.2d 1089, 1092 (9th Cir. 1980).  Default judgment is "ordinarily disfavored[,]" because "[c]ases should be decided upon their merits whenever reasonably possible."  *Eitel v. McCool*, 782 F.2d 1470, 1472 (9th Cir. 1986) (affirming district court's denial of default judgment).   At the default judgment stage, the court takes "the well-pleaded factual allegations" in the complaint "as true[,]" but "necessary facts not contained in the pleadings, and claims which are legally insufficient, are not established by default."  *Cripps v. Life Ins. Co. of N. Am.*, 980 F.2d 1261, 1267 (9th Cir. 1992). When considering whether to exercise discretion in entering a default judgment, courts may consider various factors, including:

> (1) the possibility of prejudice to the plaintiff, (2) the merits of plaintiff's substantive claim, (3) the sufficiency of the complaint, (4) the sum of money at stake in the action; (5) the possibility of a dispute concerning material facts; (6) whether the default was due to excusable neglect, and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits.

*Eitel*, 782 F.2d at 1471–72.  This district also requires a party seeking default judgment to provide "a declaration and other evidence establishing plaintiff's entitlement to a sum certain and to any nonmonetary relief sought."  Local Rules W.D. Wash. LCR 55(b)(2).

1

**C.    Mighty Dreams Fails to Allege False Advertising.**

2          The Court first considers the merits of Mighty Dreams' claims and sufficiency of the

3   complaint. *See Fed. Nat. Mortg. Ass'n v. George*, No. EDCV 14-01679-VAP (SPx), 2015 WL

4   4127958, at *3 (C.D. Cal. July 7, 2015) ("The merits of the plaintiff's substantive claim and the

5   sufficiency of the complaint are often treated by courts as the most important *Eitel* factors.");

6   *Curtis v. Illumination Arts, Inc.*, 33 F. Supp. 3d 1200, 1211 (W.D. Wash. 2014) ("The second and

7   third *Eitel* factors—the substantive merits of the claim and the sufficiency of the complaint—are

8   often analyzed together."). For the second and third factors to weigh in favor of default judgment,

9   the complaint's allegations must be sufficient to state a claim for relief. *Danning v. Lavine*, 572

10  F.2d 1386, 1388 (9th Cir. 1978). A complaint satisfies this standard when the claims cross "the

11  line from the conceivable to plausible." *Ashcroft v. Iqbal*, 556 U.S. 662, 680 (2009); *In re Singh*,

12  No. 10-42050-D-7, 2013 WL 5934299, at *3 (Bankr. E.D. Cal. Nov. 4, 2013) (stating that a

13  "complaint [that] is well-pleaded and sets forth plausible facts—not just parroted statutory or

14  boilerplate language," merits default judgment).

15          1.   The sufficiency and merits of the three causes of action can be analyzed concurrently.

16          A false advertising claim under the Lanham Act includes the following elements:

17          (1) a false statement of fact by the defendant in a commercial advertisement about
            its own or another's product; (2) the statement actually deceived or has the tendency
18          to deceive a substantial segment of its audience; (3) the deception is material, in
            that it is likely to influence the purchasing decision; (4) the defendant caused its
19          false statement to enter interstate commerce; and (5) the plaintiff has been or is
            likely to be injured as a result of the false statement, either by direct diversion of
20          sales from itself to defendant or by lessening of the goodwill associated with its
            products.
21
    *AECOM Energy & Constr., Inc. v. Morrison Knudsen Corp.*, 748 F. App'x 115, 118 (9th Cir.
22
    2018). "To demonstrate falsity within the meaning of the Lanham Act, a plaintiff may show that
23
    the statement was literally false, either on its face or by necessary implication, or that the statement
24
    was literally true but likely to mislead or confuse consumers." *Nat'l Prods., Inc. v. Gamber-*

*Johnson LLC*, 699 F. Supp. 2d 1232, 1237 (W.D. Wash. 2010); *see also Southland Sod Farms v. Stover Seed Co.*, 108 F.3d 1134, 1140 (9th Cir. 1997). The elements of false advertising under the Lanham Act are identical to the elements of unfair competition under Washington common law. *Cascade Yarns, Inc. v. Knitting Fever, Inc.*, No. C10-861 RSM, 2015 WL 3407882, at *7 (W.D. Wash. May 27, 2015).

Lastly, a CPA claim requires: "(1) an unfair or deceptive act or practice (2) occurring in trade or commerce (3) that impacts the public interest (4) causing an injury to the plaintiff's business or property with (5) a causal link between the unfair or deceptive act and the injury suffered." *Dewitt Const. Inc. v. Charter Oak Fire Ins. Co.*, 307 F.3d 1127, 1138 (9th Cir. 2002). Courts have found that false advertising under the Lanham Act is an unfair or deceptive act or practice under the CPA. *See CertainTeed Corp. v. Seattle Roof Brokers*, No. C09-563RAJ, 2010 WL 2640083, at *6 (W.D. Wash. June 28, 2010).

Accordingly, the Court will analyze Mighty Dream's theories of false advertising under the Lanham Act first.

2. Mighty Dreams does not allege that having multiple selling accounts could mislead consumers.

Mighty Dreams' first legal theory is that the Defendants are "one and the same" but sell the same products under two different selling accounts to "manipulate the Amazon.com Buy Box." Dkt. No. 1 ¶¶ 29, 31. Defendants' selling accounts are accurately labeled, so Mighty Dreams must allege "that the statement was literally true but likely to mislead or confuse consumers." *Nat'l Prods.*, 699 F. Supp. 2d at 1237.

Mighty Dreams alleges that "[w]hen multiple sellers sell the same or similar products, Amazon utilizes an algorithm to determine which seller's product appears in the Buy Box" and that "a brand's placement within the Buy Box typically means the difference between making a sale or not." Dkt. No. 1 ¶¶ 21–22. Mighty Dreams alleges "it is generally believed" the Buy Box

algorithm "assesses a number of factors, such as seller status, order defect rates and rates of returns, inventory status, product price, in-stock consistency, shipping times, and customer feedback." *Id.* ¶ 23. But Mighty Dreams goes on to allege that the "Buy Box algorithm often rotates between sellers, including when sellers lower their prices." *Id.* ¶ 24. While common sense dictates a rotating Buy Box algorithm could be manipulated by multiple selling accounts, Mighty Dreams' other allegations that the Buy Box algorithm "assesses multiple factors" directly contradicts such an understanding. *Id.* ¶ 23. Mighty Dreams' allegations about how the Buy Box works and the impact of multiple selling accounts on obtaining the Buy Box are vague, inconsistent, and insufficient to support its claim that Defendants' operation of multiple selling accounts could mislead consumers. Even Amazon's policy against multiple selling accounts does not link violations of this policy with manipulation of its systems or consumer confusion. Dkt. No. 24-2 at 6. Without more allegations connecting multiple selling accounts with the alleged manipulation of the Buy Box, Mighty Dreams fails to sufficiently allege each of the following elements of a false advertising Lanham Act claim: a false statement, the statement could deceive a substantial segment of its audience, or that the deception was material.

      3.  <u>Mighty Dreams' allegations regarding Defendants' "normal price" are insufficient.</u>

Mighty Dreams also asserts that Defendants engage in false advertising by advertising "their products as being deeply discounted by 27% for a limited period of time through Amazon.com Lightning Deals" but the "so-called deeply discounted Lightning Deals are often priced at their normal retail price." Dkt. No. 1 ¶¶ 35, 37. But Mighty Dreams' declaration that $26.99 is the "normal retail price" of the products (Dkt. No. 24-7 ¶ 10) conflicts with the screenshots in the complaint and policies provided with this motion. Most clearly, the screenshot of Defendant Keepooon's product detail page shows a normal price of $42.99 which directly undermines the argument that $26.99 is an artificial sale. Dkt. No. 1 ¶ 18. Further, the other

screenshots of Defendants' products in the complaint show a "typical price" of $36.99. *Id.* ¶¶ 17, 35, 37.   These screenshots, considered together with the Amazon Deals policy that explains Lightning Deals are time-bound and reference prices are validated (Dkt. No. 24-4), weaken Mighty Dreams' claim that $26.99 is a false advertisement.   Again, Mighty Dreams fails to sufficiently allege three of the required elements for a false advertising Lanham Act claim.

The Court finds both Mighty Dreams' theories of false advertising, under all three causes of action, are insufficient to support default judgment.   This finding is dispositive of the motion and the Court need not analyze the remaining *Eitel* factors or Mighty Dreams' damages.   *See Monster Energy Co. v. Pelmir Enter. Inc.*, No. 2:22-CV-00524-LK, 2023 WL 3075653, at *7 (W.D. Wash. Apr. 25, 2023) (citing *Dureau v. Allenbaugh*, 708 F. App'x 443, 444 (9th Cir. 2018)).

The motion is denied without prejudice and the Court grants Mighty Dreams leave to amend its complaint to cure the insufficient factual allegations described above.[2]

### III.   CONCLUSION

For these reasons, the Court denies Mighty Dreams' motion for default judgment.   Mighty Dreams may amend its complaint by July 7, 2025.   The amended complaint must be served on Defendants in accordance with the Court's order granting alternative service.   Dkt. No. 14.   Mighty Dreams may then file a new motion for entry of default, followed by a new motion for default judgment.

Dated this 9th day of June, 2025.

Kymberly K. Evanson
United States District Judge

---

[2] To the extent Mighty Dreams moves for default judgment in the future, the Court notes Mighty Dreams seeks an asset freeze in its motion which is not a category of relief requested in the complaint. *See* Fed. R. Civ. P. 54(c) ("A default judgment must not differ in kind from, or exceed in amount, what is demanded in the pleadings.").

ORDER DENYING MOTION FOR DEFAULT JUDGMENT WITHOUT PREJUDICE - 7