UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| MIGHTY DREAMS LLC,<br><br>                Plaintiff(s),<br>   v.<br><br>SHENZHEN BEIANEN AUTOMOTIVE SUPPLIES CO LTD et al.,<br><br>                Defendant(s). | CASE NO. C24-00793-KKE<br><br>ORDER DENYING MOTION FOR DEFAULT JUDGMENT WITHOUT LEAVE TO AMEND |

Plaintiff Mighty Dreams LLC ("Mighty Dreams") moves for a second time for default judgment on its false advertising claims. Dkt. No. 32. Mighty Dreams, a vendor of knife sharpening stones, alleges that Defendants set false bargain prices on their knife sharpening stones to game Amazon's Buy Box and Lightning Deal systems, thereby deceiving customers. Dkt. No. 27. Mighty Dreams also asserts that these false bargain schemes result in the direct diversion of sales from it to Defendants (Dkt. No. 27 ¶¶ 89, 102, 115) in violation of Section 43 of the Lanham Act, 15 U.S.C. § 1125(a), the Washington Consumer Protection Act ("CPA"), Wash. Rev. Code § 19.86.090, and Washington common law unfair competition. Dkt. No. 27 ("FAC") ¶¶80–117. For the reasons below, the Court denies Mighty Dreams' motion for default judgment and dismisses this case.

# I. BACKGROUND

Mighty Dreams is an online retailer of Sharp Pebble brand knife sharpening stones. Dkt. No. 27 ¶¶ 13, 16. Defendant Shenzhen Beianen Automotive Supplies Co., Ltd. sells knife sharpening stones through the Amazon store under seller name FEIAN and Defendant Shenzhen Changfuwei Furniture Co., Ltd. sells the same product under seller name Keepoon. *Id.* ¶¶ 7, 8. Defendants sell Intelitopia brand sharpening stones, and allegedly compete with Mighty Dreams to sell their products in the Amazon.com marketplace. *Id.* ¶¶ 1–5, 13–18.

On June 5, 2024, Mighty Dreams filed this lawsuit. Dkt. No. 1. On June 9, 2025, the Court denied Mighty Dreams' first motion for default judgment (Dkt. No. 24), finding the complaint's allegations insufficient to state a claim for relief. Dkt. No. 26 at 7. On June 11, 2025, Mighty Dreams filed its amended complaint. *See* Dkt. No. 27. Now before the Court is Mighty Dreams' second motion for default judgment. Dkt. No. 32.

## A. Buy Box Allegations

Mighty Dreams alleges that Defendants created separate Amazon.com seller accounts despite being "identical sellers that are selling the same product" to game Amazon's Buy Box feature. Dkt. No. 27 ¶¶ 50, 53. The Buy Box is a box that appears to the right of a product listing, allowing customers to either buy or add a specific product to their cart, and Mighty Dreams alleges that a seller "winning" the Buy Box can help increase their sales. *Id.* ¶ 20, 53–54. Though the Buy Box algorithm is proprietary, some have hypothesized that offering a product at the lowest price increases a product's chance of "winning" the Buy Box. *Id.* ¶ 23–25. In its amended complaint, Mighty Dreams explains that "sellers who … provide the lowest price amongst various competitive sellers *for a given product* win the Buy Box." *Id.* ¶ 24 (emphasis added), Dkt. No. 32 at 7 (citing blogs explaining the same). In other words, the Buy Box creates competition between sellers of an individual, specific product.

ORDER DENYING MOTION FOR DEFAULT JUDGMENT WITHOUT LEAVE TO AMEND - 2

Defendants sell knife sharpening stones which are "virtually identical" to, but not the same as, Mighty Dreams' products. Dkt. No. 27 ¶¶ 17, 18. While Mighty Dreams sells Sharp Pebble brand knife sharpening stones, Defendants sell Intelitopia brand knife sharpening stones. *Id.* Mighty Dreams alleges that Defendants work in concert to win the Buy Box from other sellers: while one account lists the knife sharpening stones at a low "sale" price, the other account lists the same product at the artificially high price. Dkt. No. 27 at ¶¶ 54–66. This results in Defendants effectively monopolizing the "Buy Box rotation" as to Intelitopia knife sharpening stones, cutting out sellers of other similar products such as Mighty Dreams. *Id.* Defendants allegedly rotate their price offerings to "create the illusion that there is competition amongst sellers of the same product while, instead, Defendants are cooperating to control the Buy Box among their commonly controlled entities." *Id.* ¶ 58.

**B.     Lightning Deal and False Bargain Price Allegations**

Lightning Deals are limited-time discounts offered for a certain period or while supplies last. *Id.* ¶ 27. Mighty Dreams alleges that Defendants offered Lightning Deals "priced at their normal retail price." *Id.* ¶ 67–70, Dkt. No. 32 at 12. Mighty Dreams provides pricing data showing Defendants' average sharpening stone price was $26.99, the same price Defendants claim to be the on-sale price. *See* Dkt. No. 32-11 at 2. Mighty Dreams argues these false advertisements directly divert sales from it to Defendants and deceive consumers in violation of the Lanham Act (15 U.S.C. § 1125(a)), the Washington Consumer Protection Act ("CPA") (WASH. REV. CODE § 19.86.090), and Washington common law[1] unfair competition. Dkt. No. 27 ¶¶ 80–117.

---

[1] The amended complaint references "California state law" and "Washington common law[.]" Dkt. No. 27 ¶¶ 79, 117. Because the motion for default cites Washington law, the Court applies Washington common law. *See* Dkt. No. 32 at 5–6.

ORDER DENYING MOTION FOR DEFAULT JUDGMENT WITHOUT LEAVE TO AMEND - 3

Mighty Dreams also asserts that Defendants' actions violate the terms of the Amazon Services Business Solutions Agreement ("BSA"), which is an agreement between each seller and Amazon that incorporates Amazon's various policies. *Id.* ¶¶ 31–43, 61.

## II. ANALYSIS

### A. Jurisdiction

"[A] district court has an affirmative duty to look into its jurisdiction over both the subject matter and the parties" before entering default. *In re Tuli*, 172 F.3d 707, 712 (9th Cir. 1999). This Court has subject matter jurisdiction under 28 U.S.C. § 1331 because the Lanham Act false advertising claim arises under federal law, and the Court has supplemental jurisdiction under 28 U.S.C. § 1367(a) over the remaining state law false advertising claims. The Court has personal jurisdiction over Defendants because, taking Mighty Dreams' allegations as true, Defendants "transacted business using a Washington state company as its sales platform, reached out to do business with Washington residents through that platform … [and] Plaintiffs' claims arose from these contacts with Washington state[.]" *Amazon.com, Inc. v. Chalova*, No. C23-0747JLR, 2024 WL 5356879, at *2 (W.D. Wash. Oct. 17, 2024); *see* Dkt. No. 27 ¶ 11.

### B. Legal Standard

After the entry of default, a court has the discretion to enter a default judgment under Federal Rule of Civil Procedure 55(b)(2). *Aldabe v. Aldabe*, 616 F.2d 1089, 1092 (9th Cir. 1980); *see also* Local Rules W.D. Wash. LCR 55(b). Default judgment is "ordinarily disfavored[,]" because "[c]ases should be decided upon their merits whenever reasonably possible." *Eitel v. McCool*, 782 F.2d 1470, 1472 (9th Cir. 1986) (affirming district court's denial of default judgment). "With respect to the determination of liability and the default judgment itself, the general rule is that well-pled allegations in the complaint regarding liability are deemed true," except those related to damages. *Fair Hous. of Marin v. Combs*, 285 F.3d 899, 906 (9th Cir. 2002).

When considering whether to exercise discretion in entering a default judgment, courts may consider various factors, including:

> (1) the possibility of prejudice to the plaintiff, (2) the merits of plaintiff's substantive claim, (3) the sufficiency of the complaint, (4) the sum of money at stake in the action; (5) the possibility of a dispute concerning material facts; (6) whether the default was due to excusable neglect, and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits.

*Eitel*, 782 F.2d at 1471–72. This district also requires a party seeking default judgment to provide "a declaration and other evidence establishing plaintiff's entitlement to a sum certain and to any nonmonetary relief sought." LCR 55(b)(2).

## C. Mighty Dreams Again Fails to Allege False Advertising.

The Court first considers the second and third *Eitel* factors—the merits of Mighty Dreams' claims and the sufficiency of its amended complaint. *See Curtis v. Illumination Arts, Inc.*, 33 F. Supp. 3d 1200, 1211 (W.D. Wash. 2014) ("The second and third *Eitel* factors—the substantive merits of the claim and the sufficiency of the complaint—are often analyzed together."). "The merits of the plaintiff's substantive claim and the sufficiency of the complaint are often treated by courts as the most important *Eitel* factors." *Fed. Nat'l Mortg. Ass'n v. George*, No. EDCV 14-01679-VAP (SPx), 2015 WL 4127958, at *3 (C.D. Cal. July 7, 2015). For the second and third factors to support default judgment, the complaint's allegations must be sufficient to state a claim for relief. *Danning v. Lavine*, 572 F.2d 1386, 1388 (9th Cir. 1978). A complaint satisfies this standard when the claims cross "the line from the conceivable to plausible." *Ashcroft v. Iqbal*, 556 U.S. 662, 680 (2009); *see also In re Singh*, No. 10-42050-D-7, 2013 WL 5934299, at *3 (Bankr. E.D. Cal. Nov. 4, 2013) (default judgment is supported where the "complaint is well-pleaded and sets forth plausible facts—not just parroted statutory or boilerplate language").

  1. <u>The sufficiency and merits of the three causes of action can be analyzed concurrently.</u>

A false advertising claim under the Lanham Act includes the elements below:

ORDER DENYING MOTION FOR DEFAULT JUDGMENT WITHOUT LEAVE TO AMEND - 5

> (1) a false statement of fact by the defendant in a commercial advertisement about its own or another's product; (2) the statement actually deceived or has the tendency to deceive a substantial segment of its audience; (3) the deception is material, in that it is likely to influence the purchasing decision; (4) the defendant caused its false statement to enter interstate commerce; and (5) the plaintiff has been or is likely to be injured as a result of the false statement, either by direct diversion of sales from itself to defendant or by lessening of the goodwill associated with its products.

*AECOM Energy & Constr., Inc. v. Morrison Knudsen Corp.*, 748 F. App'x 115, 118 (9th Cir. 2018). "To demonstrate falsity within the meaning of the Lanham Act, a plaintiff may show that the statement was literally false, either on its face or by necessary implication, or that the statement was literally true but likely to mislead or confuse consumers." *Nat'l Prods., Inc. v. Gamber-Johnson LLC*, 699 F. Supp. 2d 1232, 1237 (W.D. Wash. 2010); *see also Southland Sod Farms v. Stover Seed Co.*, 108 F.3d 1134, 1140 (9th Cir. 1997). The elements of false advertising under the Lanham Act are identical to the elements of unfair competition under Washington common law. *Cascade Yarns, Inc. v. Knitting Fever, Inc.*, No. C10-861 RSM, 2015 WL 3407882, at *7 (W.D. Wash. May 27, 2015).

Finally, a Washington CPA claim requires:

> (1) an unfair or deceptive act or practice (2) occurring in trade or commerce (3) that impacts the public interest (4) causing an injury to the plaintiff's business or property with (5) a causal link between the unfair or deceptive act and the injury suffered.

*Dewitt Constr. Inc. v. Charter Oak Fire Ins. Co.*, 307 F.3d 1127, 1138 (9th Cir. 2002). Courts have found that false advertising under the Lanham Act is an unfair or deceptive act or practice under the CPA. *See CertainTeed Corp. v. Seattle Roof Brokers*, No. C09-563RAJ, 2010 WL 2640083, at *6 (W.D. Wash. June 28, 2010). Accordingly, the Court will analyze Mighty Dreams' theories of false advertising under the Lanham Act first.

2. <u>Mighty Dreams' Buy Box theory fails to state a claim.</u>

Mighty Dreams' first theory is that Defendants are one and the same in that they sell the same products under two selling accounts to "manipulate the Amazon.com Buy Box" and "increase the likelihood that they will obtain the Buy Box and, therefore, obtain the vast majority of sales of the listed products." Dkt. No. 27 ¶¶ 51–66. Mighty Dreams claims that this scheme creates unfair competition over the Buy Box, confusing consumers and causing the "direct diversion of sales [from it] to Defendants." *Id.* ¶¶ 89, 102, 115. As detailed below, Mighty Dreams' Buy Box theory fails for multiple reasons.

First, it unclear that the alleged Buy Box scheme constitutes a "false statement of fact" about a product under the Lanham Act or common law unfair competition. Mighty Dreams alleges that Defendants violate several terms of the Amazon policies and the BSA, but do not identify any false statements of facts concerning their products or other products that would confuse consumers or cause harm to Mighty Dreams. Nor do they cite any authority finding a Lanham Act claim arising from a seller's alleged breach of a contract with a non-party.

Second, according to the amended complaint, only sellers of the *same* product compete for the Buy Box. *See* Dkt. No. 27 ¶ 24 (alleging Buy Box applies to sellers of "a given product"); Dkt. No. 32 at 7 ("competitive sellers for a given product win the Buy Box"). Mighty Dreams does not allege that it sells an identical knife sharpening stone to Defendants. Rather, Mighty Dreams admits it sells a different brand of sharpening stones than Defendants. Dkt. No. 27 at ¶ 17 (characterizing Defendants' product as a "virtually identical," but not the same, product), *id.* ¶¶ 16–18 (Mighty Dreams sells Sharp Pebble brand stones, while Defendants sell Intelitopia brand stones). A side-by-side comparison of the two sharpening stone kits makes clear that the products are different. *See* Dkt. No. 27 at 4–5. While both the Sharp Pebble and Intelitopia kits appear to include multi-layered stone components, the Intelitopia brand set sold by Defendants includes a

leather strap, multiple non-slip rubber bases, and an "angle guide" that do not appear to be included in the Sharp Pebble brand kit sold by Mighty Dreams. *Id.* The stones themselves are also different colors. *Id.*

Mighty Dreams' Buy Box theory of harm is thus inconsistent with its allegations of how the Buy Box works. Because they are different products, Sharp Pebble brand knife sharpening stone kits do not compete with Intelitopia brand stone sets for the Buy Box. Sharp Pebble brand kits instead compete for a Buy Box with other sellers of the same product—that is, Sharp Pebble brand kits. The screenshots Mighty Dreams attaches to the complaint seem to illustrate this principle. *Compare* Dkt. No. 27 at 4 (Mighty Dreams' Sharp Pebble product occupying the entire Buy Box) *with* Dkt. No. 27 at 10, Dkt. No. 27-7 (each Defendant's Intelitopia product at top of Buy Box on respective product pages, with other Defendant's Intelitopia brand product shown below); *see also* Dkt. No. 27-9 (indicating there are only two sellers of Intelitopia brand stones). Of note, the Buy Box that populates next to Mighty Dreams' Sharp Pebble product does not include Defendants' or any other sellers' products, ostensibly because Mighty Dreams is the sole seller of Sharp Pebble brand stones. Dkt. No 27 at 4. It follows that Defendants compete for a Buy Box with other sellers of Intelitopia brand knife sharpening stone kits—not Mighty Dreams. Accordingly, Mighty Dreams' theory that Defendants' alleged manipulation of the Buy Box causes unfair competition and "direct diversion of sales" from it to Defendants fails. Dkt. No. 27 ¶ 89, Dkt. No. 32 at 15.

Third, apart from a conclusory statement about diversion of sales, Mighty Dreams fails to allege any facts that show its own sales of the Sharp Pebble product declined, let alone were diverted to Defendants owing to Defendants' allegedly false claims. Though Mighty Dreams includes screenshots of sales made by Defendants over time, it alleges no facts concerning its own sales that make it plausible that sales were diverted to Defendants, including whether its Sharp

ORDER DENYING MOTION FOR DEFAULT JUDGMENT WITHOUT LEAVE TO AMEND - 8

Pebble brand stone sales have declined since the onset of the alleged Buy Box scheme. *See generally* Dkt. No. 27; *see also Luxul Tech. Inc. v. Nectarlux, LLC*, 78 F. Supp. 3d 1156, 1172 (N.D. Cal. 2015) (dismissing Lanham Act false advertising claim where, outside of alleging that defendant made a false claim, "[t]he remainder of Plaintiff's allegations are bare recitations of the elements of a false advertising claim, bereft of any factual allegations.").

In sum, under its Buy Box theory, Mighty Dreams fails to allege a false statement, that the statement was material, and a causal link between any alleged false statement and its alleged injury, as required by the Lanham Act, Washington common law, and the Washington CPA.

3. <u>Mighty Dreams again fails to sufficiently allege its false bargain price theory.</u>

Mighty Dreams also asserts that Defendants offer false bargain prices through the Amazon marketplace. Specifically, Mighty Dreams alleges that Defendants advertise "their products … as being deeply discounted by 27% for a limited period of time through Amazon.com Lightning Deals" but the "so-called deeply discounted Lightning Deals are often priced at their normal retail price." Dkt. No. 27 ¶¶ 67–73, 82, 94, 107. These false bargains, according to Mighty Dreams, "create a false and deceptive sense of urgency that prices would later increase." *Id.* ¶ 76. In support, Mighty Dreams provides statistical data "which shows that the average price for Defendants' product is $26.99," the allegedly false bargain price, as well as screenshots showing that Defendants' products are "commonly" offered at the same price. *Id.* ¶¶ 73, 75, Dkt. No. 27-9 at 2, Dkt. No. 27-7 at 2–13.

This theory also suffers from inconsistencies in the pleadings. First, the sales data Mighty Dreams attached to the amended complaint shows that while the average price of Defendants' products is $26.99, Defendants have offered the product at prices higher than, as well as lower than, $26.99. *See* Dkt. No. 27-9 (showing oscillating product prices, including "Discount" prices higher and lower than $26.99 and non-discount prices above $40). That Defendants have offered

ORDER DENYING MOTION FOR DEFAULT JUDGMENT WITHOUT LEAVE TO AMEND - 9

the products above the price of $26.99 undercuts Mighty Dreams' false bargain allegations. In addition, in support of its damages calculation, Mighty Dreams supplied 30-day sales revenue data for Defendants' knife sharpening kits. *See* Dkt. No. 32-14 at 2. That data shows that, over a 30-day period, Defendants sold 4,216 units and earned $164,721.79. *Id.* A simple calculation[2] suggests that, over that 30-day period, Defendants' knife sharpening kit was sold at an average price of $39.07, undercutting both that $26.99 is a false bargain price, and that the $26.99 discount price deceived customers. *See B. Sanfield, Inc. v. Finlay Fine Jewelry Corp.*, 258 F.3d 578, 580 (7th Cir. 2001) (finding false bargain price where jewelry store "lack[ed] any bona fide intent to make transactions at the higher price"); *Pattie v. Coach, Inc.*, No. 1:14 CV 628, 2015 WL 736295, at *3 (N.D. Ohio Feb. 20, 2015) (rejecting false discount claim where prices varied over time).

Moreover, Mighty Dreams has not alleged facts demonstrating that Defendants' alleged conduct harmed Mighty Dreams. The amended complaint contains only a conclusory allegation of "diversion of sales" but does not allege any facts regarding how Mighty Dreams' own sales have suffered because of the alleged Lightning Deals scheme, nor how Defendants' actions caused a "diversion of sales" away from Mighty Dreams. Mighty Dreams' "mere 'conclusory allegations of law and unwarranted inferences are insufficient[.]'" *Luxul Tech. Inc.*, 78 F. Supp. 3d at 1167; *see also B. Sanfield Inc.*, 258 F.3d at 580–81 (plaintiff must show lost business or other financial injury from a competitor's deceptive price comparisons to prevail on false advertising claim).

Finally, the gravamen of Mighty Dreams' complaint is that Defendants are violating the terms of the BSA. Mighty Dreams in essence seeks to enforce the terms of the BSA between Defendants and Amazon, but cites no legal authority enabling it to do so. *Cf. Amazon.com, Inc. v.*

---

[2] The Court divided the total revenue by the number of units sold over a 30-day period ($164,721.79 revenue divided by 4,216 units) to find an average retail sale price of $39.07 per unit.

ORDER DENYING MOTION FOR DEFAULT JUDGMENT WITHOUT LEAVE TO AMEND - 10

*Dong*, 2:21-CV-00159-TL, 2024 WL 775900 (W.D. Wash. Feb. 26, 2024) (Amazon bringing false advertising claims, among others, directly against the sellers who violated the terms of the BSA).

Accordingly, the Court finds both of Mighty Dreams' re-alleged theories of false advertising, under all three causes of action, are insufficient to support default judgment. This finding is dispositive of the motion and the Court need not analyze the remaining *Eitel* factors or Mighty Dreams' damages. *See Monster Energy Co. v. Pelmir Enter. Inc.*, No. 2:22-CV-00524-LK, 2023 WL 3075653, at *7 (W.D. Wash. Apr. 25, 2023) (citing *Dureau v. Allenbaugh*, 708 F. App'x 443, 444 (9th Cir. 2018)).

The Court therefore denies Mighty Dreams' motion for default judgment.

### D.     The Court denies leave to amend.

"In determining whether dismissal without leave to amend is appropriate, courts consider such factors as … repeated failure to cure deficiencies by amendments previously allowed … and futility of amendment." *CyWee Grp. Ltd. v. HTC Corp.*, 312 F. Supp. 3d 974, 981 (W.D. Wash. 2018) (citing *Foman v. Davis*, 371 U.S. 178, 182 (1962)). "A district court does not err in denying leave to amend where the amendment would be futile." *DeSoto v. Yellow Freight Sys., Inc.*, 957 F.2d 655, 658 (9th Cir. 1992). Leave to amend is generally discretionary, and "[t]he district court's discretion to deny leave to amend is particularly broad where the plaintiff has previously filed an amended complaint." *Wagh v. Metris Direct, Inc.*, 363 F.3d 821, 830 (9th Cir. 2003).

Amendment is inappropriate here because Mighty Dreams has already amended its complaint and motion once before, and because Mighty Dreams likely cannot cure the insufficient factual allegations under its Buy Box or Lightning Deals theories consistent with the allegations already pleaded.

### III.  CONCLUSION

The Court DENIES Mighty Dreams' second motion for default judgment and Mighty Dreams' claims against Defendants are DISMISSED without leave to amend.

The Clerk is instructed to close this case.

Dated this 12th day of November, 2025.

*Kymberly K. Evanson*

Kymberly K. Evanson
United States District Judge